**FILED**

**NOVEMBER 18, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JADE CARPENTER, on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 08 C 5355 |
| PAYDAY LOAN STORES OF ILLINOIS, INC., | ) ) ) | Judge Gettleman |
| Defendant. | ) | |

**MOTION TO COMPEL ARBITRATION
AND STAY PROCEEDINGS**

Defendant, The Payday Loan Store of Illinois, Inc. ("PLS"), by its attorneys, and pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), moves this Court for entry of an order compelling Plaintiff to submit to arbitration any claim in Plaintiff's Complaint that she may wish to pursue against Defendant. Defendant further moves for this case to be stayed pending arbitration. In support of this motion, Defendant states as follows:

1.      Plaintiff's Complaint stems from two consumer loans transactions -- a January 2, 2008 loan and a February 21, 2008 loan -- with PLS. See Complaint at ¶¶ 5-6. Plaintiff alleges that the Federal Truth-In-Lending Disclosure Statements provided in conjunction with each transaction violate the Truth in Lending Act ("TILA"). See id. at ¶¶ 19-22.

2.      In connection with the loan transactions about which she complains, Plaintiff executed Consumer Loan Agreements. Each Agreement contains an Arbitration provision that clearly and unambiguously states that any claim, dispute, or controversy shall be resolved, upon election by either party, by binding arbitration. Copies of the January 2, 2008 Consumer Loan Agreement and related Wage Assignment, and February 21, 2008 Consumer Loan Agreement and related Wage Assignment are attached hereto as group Exhibit A; see also Affidavit of Daniel

Dorame, attached hereto as Exhibit B.  PLS elects arbitration, pursuant to these Agreements.  See

Exhibit C.  The arbitration provision of each Agreement provides in pertinent part:

> Any claim, dispute or controversy arising from or relating to (a) the loan made to you, (b) the actions of you, us, or third parties, or (c) the validity of this arbitration provision ("Claim") shall, upon the election by either you or us, be resolved by binding arbitration ....

> If a judgment has been entered in a suit involving you and us, the neither we nor you can demand arbitration.  This means that either we or you may sue the other party in court or initiate other remedies; however, if either we or you demand arbitration before a judgment is entered, then we and you will arbitrate the Claim. ...

> After the arbitrator(s) makes a decision, we or you may apply to any court having jurisdiction to enter a judgment based on the decision of the arbitrator(s).  This arbitration agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. 1 et seq., as amended.

> **If we or you choose arbitration, we and you no longer have the right to go to court or to have a jury trial, except for any right of appeal provided by the Federal Arbitration Act.  If arbitration is chosen, you do not have the right to have any claim arbitrated as a class action.  No joinder or consolidation of parties, except for joinder of parties to the same loan agreement, will be permitted in any arbitration.**

> If you do not want to be bound by this arbitration agreement, you may send a letter postmarked no later than the fifth business day after the date of this Agreement to Payday Loan Store 300 North Elizabeth, Suite 4E, Chicago, Illinois 60607, Attention: Lending Operations.  The letter must include your name, address, date of this Agreement, and a statement that you reject the arbitration agreement.  If you reject the arbitration agreement, your rejection applies only to claims arising out of this Agreement and not to future loan agreements, and any previous arbitration agreement covering prior claims remains effective.

> If any part of this provision or the application of this provision to any particular Claim or subject matter is held to be invalid or unenforceable, the remainder of this arbitration provision and the application of this provision to any other Claims will remain valid and enforceable.  In the event of a conflict between the arbitration organization's code and this provision, this provision controls.

> READ THIS PROVISION CAREFULLY.  IT LIMITS CERTAIN RIGHTS, INCLUDING YOUR RIGHT TO PURSUE A CLAIM IN COURT AND YOUR RIGHT TO A JURY TRIAL AND YOUR RIGHT TO PURSUE A CLAIM AS A CLASS ACTION.

Exhibit A (p. 2 of Agreements) (emphasis in original). The Arbitration provision of the Consumer

Loan Agreements executed by Plaintiff explicitly states that "[t]his arbitration agreement shall be

governed by the Federal Arbitration Act." See id.

      3.      Pursuant to Section 2 of the FAA, an arbitration provision in a written contract

evidencing a transaction involving commerce "shall be valid, irrevocable, and enforceable." 9 U.S.C.

§ 2. As the United States Supreme Court has repeatedly explained, Section 2 of the FAA "'declare[s]

a national policy favoring arbitration' of claims that parties contract to settle in that manner."

Preston v. Ferrer, __ U.S. __, 128 S. Ct. 978, 983 (2008) (quoting Southland v. Keating, 465 U.S. 1,

10 (1984)). Section 3 of the FAA, in turn, unequivocally provides that where, as here, there is an

enforceable agreement to arbitrate, the Court must stay judicial proceedings and compel arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon
> any issue referable to arbitration under an agreement in writing for such arbitration,
> the court in which such suit is pending, upon being satisfied that the issue involved
> in such suit or proceeding is referable to arbitration under such an agreement, shall
> on application of one of the parties stay the trial of the action until such arbitration
> has been had in accordance with the terms of the agreement, providing that the
> applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. "By is terms, the [FAA] leaves no place for the exercise of discretion by a district

court, but instead mandates that district courts shall direct the parties to proceed to arbitration on

issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd,

470 U.S. 213, 218 (1985) (emphasis in original); accord C. Itoh & Co. v. Jordan Int'l Co., 552 F.2d

1228, 1232 (7th Cir. 1977). If an agreement to arbitrate exists and the claims presented are within

the scope of that agreement, the FAA requires the court to stay the action and send the parties to

arbitration.

      4.      Plaintiff's statutory claim against PLS for alleged violations of the TILA in

conjunction with her loans is plainly covered by the Arbitration provision of the Consumer Loan

Agreements executed by Plaintiff, which provision states that "[a]ny claim, dispute, or controversy

arising out of or relating to … the loan made to you," shall be resolved, upon the election by either party, by binding arbitration. See Exhibit A (p. 2 of Agreements). The case law makes abundantly clear that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." Gilmer v. Interstate/Johnson Lane Corp., 500 US. 20, 26 (1991). Even if there were a doubt as to whether Plaintiff's claim falls within the scope of the Arbitration provision (and there is none), any such doubt would have to be resolved in favor of arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

WHEREFORE, Defendant, The Payday Loan Store of Illinois, Inc., requests that this Court grant Defendant's motion, and require Plaintiff to pursue through arbitration any claim in the Complaint. Defendant further requests that this Court stay the proceedings pending arbitration and grant such further relief as the Court deems appropriate.

Dated: November 5, 2008                    Respectfully submitted,

                                           THE PAYDAY LOAN STORE OF
                                           ILLINOIS, INC., Defendant


                                           By: s/ Joshua D. Davidson
                                               One of its Attorneys


Craig A. Varga
Joshua D. Davidson
Varga Berger Ledsky Hayes & Casey
A Professional Corporation
224 South Michigan Avenue
Suite 350
Chicago, Illinois 60604
(312) 341-9400

# EXHIBIT A

CONSUMER LOAN AGREEMENT    FULLY AMORTIZING

IL..NOIS FULLY AMORTIZING

Loan No.:                                                                Date: 01/02/2008

**REDACTED**

| LENDER: The Payday Loan Store of Illinois, Inc. | BORROWER: |
| Address: 7001 N. CLARK ST. CHICAGO, IL 60651 | Name: JADE CARPENTER Address: 809 W. LAKESIDE PLACE CHICAGO, IL 60640 |

This Consumer Loan Agreement (the "Agreement") states the terms of your loan with us. By signing, you agree to all the terms in this Agreement. In this Agreement, the words "you" and "your" mean each of the borrowers shown above. The words "we", "us", and "our" mean the lender shown above.

### FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 695.13 % | $1234.83 | $ 600.00 | $ 1834.83 |

Itemization of the Amount Financed:

1. Principal Amount of Loan:         $    600.00
2. Less:
   a. Interest Due on Prior Loan:    $      0.00
   b. Principal Due on Prior Loan:   $      0.00
   Loan #
3. Total Deductions (2a + 2b):       $      0.00

**PAID**

4. Cash to You (1 minus 3):  **FEB 9 2008**  $600.00

AMOUNT PAID  **538.47**

Your Payment Schedule will be:

01/18/2008: $ 185.11, 02/01/2008: $ 183.31, 02/15/2008: $ 183.31, 02/29/2008: $ 183.31,
03/14/2008: $ 183.31, 03/28/2008: $ 183.31, 04/11/2008: $ 183.31, 04/25/2008: $ 183.31,
05/09/2008: $ 183.31, 05/23/2008: $ 183.24

**Security:** Your post-dated check is security for this loan. Your wage assignment, if given, is security for this loan. [X] (Check if given)

**Prepayment:** If you pay off early, you will not have to pay a penalty.
See the contract terms below and on page 2 for additional information about nonpayment, default, and prepayment penalties.

**Your Promise to Pay:** To repay the loan we have made to you, you promise to pay us the Amount Financed shown in the Federal Truth in Lending Disclosure Statement ("Disclosure Statement") plus interest on the unpaid Amount Financed. We will begin charging interest on the date of this Agreement shown above. We will calculate the interest on a daily basis using the Annual Percentage Rate by multiplying the daily rate times the unpaid balance of the Amount Financed each day. We figure the daily rate by dividing the Annual Percentage Rate by 365 (or 366, in any leap year). You agree to repay the loan on the payment due dates shown in the Disclosure Statement ("Payment Due Dates"). Any payments you make will be applied first to any accrued interest, then to the principal, then to any other charges you owe us. You promise to pay us at the address shown above or at any other address we tell you in writing.

**Method of Payment and Security Interest:** Today you gave us a personal check ("Check") for the Amount Financed shown in the Disclosure Statement, plus interest through the first payment due date shown in the Disclosure Statement, and dated as of the next Payment Due Date. Each time you make a payment shown in the Disclosure Statement, we will return the check to you in exchange for your giving us a replacement check in the amount of the then-current unpaid Amount Financed, plus interest through the next payment due date, and dated as of the next Payment Due Date. The replacement check will be the new Check. At no time will we keep more than one replacement Check from you.

You request and we agree to wait to present the Check to your financial institution until the next Payment Due Date. If you make an alternative payment of the full amount owing, we will accept it in substitution of the uncashed Check and return the uncashed Check to you except that you agree we do not need to wait and that we may immediately present the uncashed Check to your financial institution if you do not make any other payments on or before the Payment Due Date. If you do make an alternative payment in the full amount owing, we will accept it in substitution of the uncashed Check and return the uncashed Check to you. Your post-dated Check is security for this loan. You do not grant to us any security interest in it, and we waive any rights which may arise in the deposit account upon which your Check is drawn. Your wage assignment, if one has been given, is also security for this loan.

_Jade Carpenter_  If you sign this box, you agree that we may process your Checks electronically (make an electronic withdrawal from your checking account) on or after the Payment Due Date, if you do not pay us in cash, by cashier's check, money order, or other immediately available funds the full amount owing on or before the final Payment Due Date. However, you agree that we may process your checks electronically before the Payment Due Date if you do not make any other payment on or before its Payment Due Date.

**NOTICE: See additional terms on the second page of this form for important information. This Agreement contains an arbitration provision. THE ARBITRATION PROVISION LIMITS CERTAIN RIGHTS, INCLUDING YOUR RIGHT TO PURSUE A CLAIM IN COURT AND YOUR RIGHT TO A JURY TRIAL AND YOUR RIGHT TO PURSUE A CLAIM AS A CLASS ACTION.**

## WARNING: This loan is not intended to meet long-term financial needs. This loan should be used only to meet short-term cash needs. The cost of your loan may be higher than loans offered by other lending institutions. This loan is regulated by the Department of Financial and Professional Regulation.

By signing, you state that you have recieved a completed copy of this form. By signing you also state that you have read, understand, and agree to all the terms of this Agreement, including the terms on page 2 of this form. You agree that the terms on page 2 of this form are part of this Agreement.

_Jade Carpenter_                    _Amorris_    _ASR_
Signature                           Lender Representative    Title

NOTICE: See page 2 of this Agreement for important information.

(IL PLS SmartLoan 11-12-2007)

## ADDITIONAL TERMS

**Returned Check Charges:** You agree to pay us $25 for each check or payment instrument that is returned unpaid.

**Prepayment:** You have the right to prepay all or part of the Amount Financed at any time; however, any partial prepayment must be at least $5.00. There is no additional charge for prepayment. If you do prepay in full before the Payment Due Date, you will owe less interest than the Finance Charge shown in the Disclosure Statement, and we will return your Check to you in exchange for your pre-payment in immediately available funds.

**Default:** You will be in default if you fail to make payment of any amount owing under this Agreement; you provide false, misleading information about yourself, your employment or your financial condition (including the account on which the Check(s) you deliver to us is drawn), prior to entering into this Agreement; or you fail to perform any other promise or agreement you made to us in this Agreement.

**Our Rights:** If you are in default, we have the right to exercise any remedies which are permitted by law. For example, to the extent permitted by law, we may go to court, get a judgment against you, and seek to enforce the judgment against you. If you have given us a wage assignment as security, we may also submit your signed wage assignment to your employer so that funds owed us will be deducted from your paycheck(s) and paid to us.

**More than One Signer:** Whether you sign this Agreement as an individual or as one of a group, you are each fully responsible for all the obligations owed to us.

**Credit Reporting Agencies:** We may report your performance under this Agreement to credit reporting agencies. For example, we may disclose any default by you under this Agreement to credit reporting agencies.

**Wage Deduction Authorization:** If you give us a wage assignment, we will submit the wage assignment to your employer in the event you do not make any of your payments as agreed. The wage assignment authorizes us to collect any money you owe us from your employer by having the money deducted from your paycheck(s) in the event you do not pay any amount owing under this Agreement.

**Changes, Waiver and Delay in Enforcement:** This Agreement cannot be changed unless we agree to the changes in writing. You agree that we may give up ("waive") or delay enforcement of our rights under this Agreement without losing them. If we release any of you from this Agreement, the rest of you will not be released. We do not have to use our legal remedies against one of you before we use our legal remedies against the rest of you. You give up your rights that require us to: (1) demand payment of amounts due (presentment); (2) obtain official certification of nonpayment (protest); (3) notify you that amounts due have not been paid (notice of dishonor); or (4) give you any other notice except as required by this Agreement or required by other law.

**Severability:** If any part of this Agreement is found to be unenforceable, all other provisions will remain in full force and effect.

**Agreement Binding:** You agree that this Agreement is binding on your heirs and your legal representatives. This Agreement is the final and complete expression of the agreement between you and us.

**Governing Law:** This Agreement is made pursuant to the Consumer Installment Loan Act, and any actions arising out of this Agreement are governed by the laws of Illinois.

## ARBITRATION

Any claim, dispute or controversy arising from or relating to (a) the loan made to you, (b) the actions of you, us, or third parties, or (c) the validity of this arbitration provision ("Claim") shall, upon the election by either you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Code of Procedure of the applicable arbitration organization in effect when the Claim is filed. You may select the arbitration organization from the following: either the National Arbitration Forum (1-800 474-2371, www.arb-forum.com), the American Arbitration Association (1-800-778-7879, www.adr.org), or JAMS/Endispute (1-800-352-5267, www.jamsadr.com). If you do not select an arbitration organization, you agree that we may select one.

If a judgment has been entered in a suit involving you and us, then neither we nor you can demand arbitration. This means that either we or you may sue the other party in court or initiate other remedies; however, if either we or you demand arbitration before a judgment is entered, then we and you will arbitrate the Claim. Any arbitration hearing that you attend will take place in the county where you reside. The arbitrator(s) (the people who decide the Claim) will apply relevant law; however, the arbitrator(s) will not apply federal or state rules of civil procedure or evidence. The decision of the arbitrator(s) will be evidenced by written, reasoned findings of fact (a determination of what findings of fact (a determination of what happened) and conclusions of law (legal consequences of the facts). If you ask us to, we will happened) and conclusions of law (legal consequences of the facts). If you ask us to, we will pay all or part of the filing and hearing fees that decide whether we or you will ultimately pay those fees.

After the arbitrator(s) makes a decision, we or you may apply to any court having jurisdiction to enter a judgment based on the decision of the arbitrator(s). This arbitration agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. 1 et seq., as amended.

If we or you choose arbitration, we and you no longer have the right to go to court or to have a jury trial, except for any right of appeal provided by the Federal Arbitration Act. If arbitration is chosen, you do not have the right to have any claim arbitrated as a class action. No joinder or consolidation of parties, except for joinder of parties to the same loan agreement, will be permitted in any arbitration.

If you do not want to be bound by this arbitration agreement, you may send a letter postmarked no later than the fifth business day after the date of this Agreement to Payday Loan Store 300 North Elizabeth, Suite 4E, Chicago, Illinois 60607, Attention: Lending Operations. The letter must include your name, address, date of this Agreement, and a statement that you reject the arbitration agreement. If you reject the arbitration agreement, your rejection applies only to claims arising out of this Agreement and not to future loan agreements, and any previous arbitration agreement covering prior claims remains effective.

If any part of this provision or the application of this provision to any particular Claim or subject matter is held to be invalid or unenforceable, the remainder of this arbitration provision and the application of this provision to any other Claims will remain valid and enforceable. In the event of a conflict between the arbitration organization's code and this provision, this provision controls.

READ THIS PROVISION CAREFULLY. IT LIMITS CERTAIN RIGHTS, INCLUDING YOUR RIGHT TO PURSUE A CLAIM IN COURT AND YOUR RIGHT TO A JURY TRIAL AND YOUR RIGHT TO PURSUE A CLAIM AS A CLASS ACTION.

NOTICE: See page 1 of this form for important information.

(IL PLS SmartLoan 11-12-2007)

# W.^GE ASSIGNMENT

Date: 01/02/2008
Assignor's (Employee/Borrower) Name and Address ("You", "Your"): JADE CARPENTER
809 W. LAKESIDE PLACE CHICAGO, IL 60640

Assignor's Social Security Number:
Assignee's (Employer's) Name and Address ("We", "Us", "Our"): MISERICORDIA HOME

REDACTED

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | Amount Financed | Total of Payments | Itemization of the Amount Financed: |
|---|---|---|---|---|
| The cost of your credit as a yearly rate. | The dollar amount the credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | 1. Amount Given Directly To You: |
| 695.13 % | $ 1234.83 | $ 600.00 | $ 1834.83 | $    600.00 |
| | | | | 2. Amount Paid On Previous Loan with us: |
| | | | | $    0.00 |

Payment Schedule:
01/18/2008: $ 183.11, 02/01/2008: $ 183.31, 02/15/2008: $ 183.31, 02/29/2008: $ 183.31,
03/14/2008: $ 183.31, 03/28/2008: $ 183.31, 04/11/2008: $ 183.31, 04/25/2008: $ 183.31,
05/09/2008: $ 183.31, 06/23/2008: $ 183.24

Security: As security for this loan, you are giving us a wage assignment and
[X] your post-dated check # 0110
[ ] a security interest in your Motor Vehicle or, if your Amount Financed is
   $ 500 or less, in the title certificate for the Motor Vehicle.
Prepayment: If you pay off early, you will not have to pay a penalty.
See the contract documents for additional information about nonpayment, default,
and prepayment penalties.

To secure payment of your loan and interest on your loan at the rate shown and subject to provisions of applicable law, you hereby assign, transfer and set over to us, wages, salary, commissions and bonuses due or subsequently earned from your present employer(s) for a period of three (3) years from the date of this wage assignment and from any future employer within a period of two (2) years from the date of this wage assignment. If you are in default of your loan agreement, we will have the right to collect the amount due from your present or future employer(s).You may revoke this Assignment of Wages at will by written notice to us. This assignment shall remain effective as to any of you who do not revoke this wage assignment.

The amount that may be collected by us under this Wage Assignment shall not exceed the lesser of: (1) 15% of the gross amount paid for that week or (2) the amount by which disposable earnings for a week exceed 45 times the Federal Minimum Hourly Wage or the minimum hourly wage prescribed by Section 4 of the Minimum Wage Law, whichever is greater, in effect at the time the amounts are payable; and shall be collected until the total amount due under this assignment is paid or until expiration of employer's payroll period ending immediately prior to 84 days after service of the demand hereon, whichever first occurs. The term 'disposable earnings' means that the part of the earnings remaining after deduction of any amounts required by law to be withheld.
You hereby authorize, empower and direct your employer(s) to pay to us any and all moneys due or to become due you hereon, authorize us to receive the same and release and discharge employer from all liability to you on account of moneys paid in accordance with this wage assignment. No copy of this wage assignment shall be served on employer(s) except in conformity with applicable law.

You acknowledge receipt of an exact copy of this Wage Assignment.

## WAGE ASSIGNMENT

ASSIGNOR ("You", "Your") *Jade Carpenter* EMPLOYER'S NAME *Misericordia Home*
(Executed in duplicate; one copy of which has delivered to and retained by assignor)

*Amarris*

WITNESS

CONSUMER LOAN AGREEMENT     FULLY AMORTIZING

## ILLINOIS FULLY AMORTIZING

Date: 02/21/2008

Loan No.:

| LENDER: The Payday Loan Store of Illinois, Inc. | BORROWER: |
| Address: 7001 N. CLARK ST. | Name: JADE CARPENTER |
| CHICAGO, IL 60651 | Address: 809 W. LAKESIDE PLACE |
| | CHICAGO, IL 60640 |

This Consumer Loan Agreement (the "Agreement") states the terms of your loan with us. By signing, you agree to all the terms in this Agreement. In this Agreement, the words "you" and "your" mean each of the borrowers shown above. The words "we", "us", and "our" mean the lender shown above.

### FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you've have paid after you have made all payments as scheduled |
|---|---|---|---|
| 702.04 % | $1360.96 | $ 800.00 | $ 2160.96 |

Your Payment Schedule will be:

02/29/2008: $ 216.14, 03/14/2008: $ 216.14, 03/28/2008: $ 216.14, 04/11/2008: $ 216.14,
04/25/2008: $ 216.14, 05/09/2008: $ 216.14, 05/23/2008: $ 216.14, 06/06/2008: $ 216.14,
06/20/2008: $ 216.14, 07/04/2008: $ 215.70

Security: Your post-dated check is security for this loan.
Your wage assignment, if given, is security for this loan. ☒ (Check if given)
Prepayment: If you pay off early, you will not have to pay a penalty.
See the contract terms below and on page 2 for additional information about nonpayment, default, and prepayment penalties.

Itemization of the Amount Financed:

1. Principal Amount of Loan:
   $ 800.00

2. Less:
   a. Interest Due on Prior Loan:
   $ 0.00
   b. Principal Due on Prior Loan:
   $ 0.00
   Loan #

3. Total Deductions (2a + 2b):
   $ 0.00

4. Cash to You (1 minus 3):
   $ 800.00

DEPOSIT
129
JUN 27 2008
983.35

**Your Promise to Pay**: To repay the loan we have made to you, you promise to pay us the Amount Financed shown in the Federal Truth in Lending Disclosure Statement ("Disclosure Statement") plus interest on the unpaid Amount Financed. We will begin charging interest on the date of this Agreement shown above. We will calculate the interest on a daily basis using the Annual Percentage Rate by multiplying the daily rate times the unpaid balance of the Amount Financed each day. We figure the daily rate by dividing the Annual Percentage Rate by 365 (or 366, in any leap year). You agree to repay the loan on the payment due dates shown in the Disclosure Statement ("Payment Due Dates"). Any payments you make will be applied first to any accrued interest, then to the principal, then to any other charges you owe us.
You promise to pay us at the address shown above or at any other address we tell you in writing.

**Method of Payment and Security Interest**: Today you gave us a personal check ("Check") for the Amount Financed shown in the Disclosure Statement, plus interest through the first payment due date shown in the Disclosure Statement, and dated as of the next Payment Due Date. Each time you make a payment shown in the Disclosure Statement, we will return the check to you in exchange for your giving us a replacement check in the amount of the then-current unpaid Amount Financed, plus interest through the next payment due date, and dated as of the next Payment Due Date. The replacement check will be the new Check. At no time will we keep more than one postdated Check from you.

You request and we agree to wait to present the Check to your financial institution until the next Payment Due Date. If you make an alternative payment of the full amount owing, we will accept it in substitution of the uncashed Check and return the uncashed Check to you except that you agree we do not need to wait and that we may immediately present the check to your financial institution if you do not make any other payments on or before the Payment Due Date. If you do make an alternative payment in the full amount owing, we will accept it in substitution of the Check and return the uncashed Check to you. Your post-dated Check is security for this loan. You do not grant to us any security interest in it, and we waive any rights which may arise in the deposit account upon which any check is drawn. Your wage assignment, if one has been given, is also security for this loan.

[signature] If you sign this box, you agree that we may process your Checks electronically (make an electronic withdrawal from your checking account) on or after the final Payment Due Date, if you do not pay us in cash by cashier's check, money order, or other immediately available funds the full amount owing on or before the final Payment Due Date. However, you agree that we may process your checks electronically before the Payment Due Date if you do not make any other payment on or before its Payment Due Date.

**NOTICE**: See additional terms on the second page of this form for important information. This agreement contains an arbitration provision: "THE ARBITRATION PROVISION LIMITS CERTAIN RIGHTS, INCLUDING YOUR RIGHT TO PURSUE A CLAIM IN COURT AND YOUR RIGHT TO A JURY TRIAL AND YOUR RIGHT TO PURSUE A CLAIM AS A CLASS ACTION.

**WARNING: This loan is not intended to meet long-term financial needs. This loan should be used only to meet short-term cash needs. The cost of your loan may be higher than loans offered by other lending institutions. This loan is regulated by the Department of Financial and Professional Regulation.**

By signing, you state that you have recieved a completed copy of this form. By signing you also state that you have read, understand, and agree to all the terms of this Agreement, including the terms on page 2 of this form. You agree that the terms on page 2 of this form are part of this Agreement.

_____     _____     _____
Signature                Lender Representative     Title

NOTICE: See page 2 of this Agreement for important information.

(IL PLS SmallLoan 11-12-2007)

REDACTED

## ADDITIONAL TERMS

**Returned Check Charges:** You agree to pay us $25 for each check or payment instrument that is returned unpaid.

**Prepayment:** You have the right to prepay all or part of the Amount Financed at any time; however, any partial prepayment must be at least $5.00. There is no additional charge for prepayment. If you do prepay in full before the Payment Due Date, you will owe less interest than the Finance Charge shown in the Disclosure Statement, and we will return your Check to you in exchange for your pre-payment in immediately available funds.

**Default:** You will be in default if you fail to make payment of any amount owing under this Agreement; you provide false, misleading information about yourself, your employment or your financial condition (including the account on which the Check(s) you deliver to us is drawn); prior to entering into this Agreement; or you fail to perform any other promise or agreement you made to us in this Agreement.

**Our Rights:** If you are in default, we have the right to exercise any remedies which are permitted by law. For example, to the extent permitted by law, we may go to court, get a judgment against you, and seek to enforce the judgment against you. If you have given us a wage assignment as security, we may also submit your signed wage assignment to your employer so that funds owed us will be deducted from your paycheck(s) and paid to us.

**More than One Signer:** Whether you sign this Agreement as an individual or as one of a group, you are each fully responsible for all the obligations owed to us.

**Credit Reporting Agencies:** We may report your performance under this Agreement to credit reporting agencies. For example, we may disclose any default by you under this Agreement to credit reporting agencies.

**Wage Deduction Authorization:** If you give us a wage assignment, we will submit the wage assignment to your employer in the event you do not make any of your payments as agreed. The wage assignment authorizes us to collect any money you owe us from your employer by having the money deducted from your paycheck(s) in the event you do not pay any amount owing under this Agreement.

**Changes, Waiver and Delay in Enforcement:** This Agreement cannot be changed unless we agree to the changes in writing. You agree that we may give up ("waive") or delay enforcement of our rights under this Agreement without losing them. If we release any of you from this Agreement, the rest of you will not be released. We do not have to use our legal remedies against one of you before we use our legal remedies against the rest of you. You give up your rights that require us to: (1) demand payment of amounts due (presentment); (2) obtain official certification of nonpayment (protest); (3) notify you that amounts due have not been paid (notice of dishonor); or (4) give you any other notice except as required by this Agreement or required by other law.

**Severability:** If any part of this Agreement is found to be unenforceable, all other provisions will remain in full force and effect.

**Agreement Binding:** You agree that this Agreement is binding on your heirs and your legal representatives. This Agreement is the final and complete expression of the agreement between you and us.

**Governing Law:** This Agreement is made pursuant to the Consumer Installment Loan Act, and any actions arising out of this Agreement are governed by the laws of Illinois.

## ARBITRATION

Any claim, dispute or controversy arising from or relating to (a) the loan made to you, (b) the actions of you, us, or third parties, or (c) the validity of this arbitration provision ("Claim") shall, upon the election by either you or us, be resolved by binding arbitration in accordance with this arbitration provision and the Code of Procedure of the applicable arbitration organization in effect when the Claim is filed. You may select the arbitration organization from the following: either the National Arbitration Forum (1-800 474-2371, www.arb-forum.com), the American Arbitration Association (1-800-778-7879, www.adr.org), or JAMS/Endispute (1-800-352-5267, www.jamsadr.com). If you do not select an arbitration organization, you agree that we may select one.

If a judgment has been entered in a suit involving you and us, then neither we nor you can demand arbitration. This means that either we or you may sue the other party in court or initiate other remedies; however, if either we or you demand arbitration before a judgment is entered, then we and you will arbitrate the Claim. Any arbitration hearing that you attend will take place in the county where you reside. The arbitrator(s) (the people who decide the Claim) will apply relevant law; however, the arbitrator(s) will not apply federal or state rules of civil procedure or evidence. The decision of the arbitrator(s) will be evidenced by written, reasoned findings of fact (a determination of what happened) and conclusions of law (legal consequences of the facts). If you ask us to, we will pay all or part of the filing and hearing fees that decide whether we or you will ultimately pay those fees.

After the arbitrator(s) makes a decision, we or you may apply to any court having jurisdiction to enter a judgment based on the decision of the arbitrator(s). This arbitration agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. 1 et seq., as amended.

**If we or you choose arbitration, we and you no longer have the right to go to court or to have a jury trial, except for any right of appeal provided by the Federal Arbitration Act. If arbitration is chosen, you do not have the right to have any claim arbitrated as a class action. No joinder or consolidation of parties, except for joinder of parties to the same loan agreement, will be permitted in any arbitration.**

If you do not want to be bound by this arbitration agreement, you may send a letter postmarked no later than the fifth business day after the date of this Agreement to Payday Loan Store 300 North Elizabeth, Suite 4E, Chicago, Illinois 60607. Attention: Lending Operations. The letter must include your name, address, date of this Agreement, and a statement that you reject the arbitration agreement. If you reject the arbitration agreement, your rejection applies only to claims arising out of this Agreement and not to future loan agreements, and any previous arbitration agreement covering prior claims remains effective.

If any part of this provision or the application of this provision to any particular Claim or subject matter is held to be invalid or unenforceable, the remainder of this arbitration provision and the application of this provision to any other Claims will remain valid and enforceable. In the event of a conflict between the arbitration organization's code and this provision, this provision controls.

**READ THIS PROVISION CAREFULLY. IT LIMITS CERTAIN RIGHTS, INCLUDING YOUR RIGHT TO PURSUE A CLAIM IN COURT AND YOUR RIGHT TO A JURY TRIAL AND YOUR RIGHT TO PURSUE A CLAIM AS A CLASS ACTION.**

**NOTICE: See page 1 of this form for important information.**

(IL, PLS SmartLoan 11-12-2007)

# WAGE ASSIGNMENT

Date: 02/21/2008
Assignor's (Employee/Borrower) Name and Address ("You", "Your"): JADE CARPENTER
909 W. LAKESIDE PLACE CHICAGO, IL 60640
Assignor's Social Security Number:
Assignee's (Employer's) Name and Address ("We", "Us", "Our"): MISERICORDIA HOME

**REDACTED**

## FEDERAL TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 702.04 % | $ 1360.96 | $ 800.00 | $ 2160.96 |

Itemization of the Amount Financed:
1. Amount Given Directly To You:
   $ 800.00
2. Amount Paid On Previous Loan with us:
   $ 0.00

Payment Schedule:
02/29/2008: $ 216.14, 03/14/2008: $ 216.14, 03/28/2008: $ 216.14, 04/11/2008: $ 216.14,
04/25/2008: $ 216.14, 05/09/2008: $ 216.14, 05/23/2008: $ 216.14, 06/06/2008: $ 216.14,
06/20/2008: $ 216.14, 07/04/2008: $ 215.70

Security: As security for this loan, you are giving us a wage assignment and
☒ your post-dated check # 119
☐ a security interest in your Motor Vehicle or, if your Amount Financed is
$ 500 or less, in the title certificate for the Motor Vehicle.
Prepayment: If you pay off early, you will not have to pay a penalty.
See the contract documents for additional information about nonpayment, default,
and prepayment penalties.

To secure payment of your loan and interest on your loan at the rate shown and subject to provisions of applicable law, you hereby assign, transfer and set over to us, wages, salary, commissions and bonuses due or subsequently earned from your present employer(s) for a period of three (3) years from the date of this wage assignment and from any future employer within a period of two (2) years from the date of this wage assignment. If you are in default of your loan agreement, we will have the right to collect the amount due from your present or future employer(s). You may revoke this Assignment of Wages at will by written notice to us. This assignment shall remain effective as to any of you who do not revoke this wage assignment.

The amount that may be collected by us under this Wage Assignment shall not exceed the lesser of: (1) 15% of the gross amount paid for that week or (2) the amount by which disposable earnings for a week exceed 45 times the Federal Minimum Hourly Wage or the minimum hourly wage prescribed by Section 4 of the Minimum Wage Law, whichever is greater, in effect at the time the amounts are payable, and shall be collected until the total amount due under this assignment is paid or until expiration of employer's payroll period ending immediately prior to 84 days after service of the demand hereon, whichever first occurs. The term 'disposable earnings' means that the part of the earnings remaining after deduction of any amounts required by law to be withheld.

You hereby authorize, empower and direct your employer(s) to pay to us any and all moneys due or to become due you hereon, authorize us to receive the same and release and discharge employer from all liability to you on account of moneys paid in accordance with this wage assignment. No copy of this wage assignment shall be served on employer(s) except in conformity with applicable law.

You acknowledge receipt of an exact copy of this Wage Assignment.

## WAGE ASSIGNMENT

ASSIGNOR ("You", "Your")
(Executed in duplicate; one copy of which was delivered to and retained by assignor)

EMPLOYER'S NAME: *Misericordia*

(WITNESS):

(IL PLS SmartLoan 1-23-2006)

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JADE CARPENTER, on behalf of herself and )
others similarly situated, )
           )
             Plaintiff, )
           )
             v. )      No. 08 C 5355
           )
PAYDAY LOAN STORES OF ILLINOIS, INC., )      Judge Gettleman
           )
             Defendant. )

## AFFIDAVIT OF DANIEL DORAME

STATE OF ILLINOIS     )
                       ) ss.:
COUNTY OF COOK     )

        I, Daniel Dorame, being first duly sworn upon my oath, and under penalties of perjury,

depose and state as follows:

        1.      I am an adult of sound mind and can testify to the matters set forth in this affidavit

at trial or hearing, based upon personal knowledge.

        2.      I am Director of Operations for PLS Loan Store Illinois -- North, and

authorized to provide this affidavit on behalf of The Payday Loan Store of Illinois, Inc.

("PLS").

        3.      I have reviewed the copies of the January 2, 2008 Consumer Loan Agreement and

related Wage Assignment, and the February 21, 2008 Consumer Loan Agreement and related Wage

Assignment, which documents are attached as an exhibit to PLS's Motion to Compel Arbitration

and Stay Proceedings. They are true and accurate copies (except to the extent that the exhibit copies

are one-sided and reduced to 8.5" x 11" paper). These records are a part of Jade Carpenter's

1

customer file; they are kept in the course of PLS's ordinary and regular business activity, and it is in

the ordinary and regular course of PLS's business to keep and maintain such records.

Further Affiant Sayeth Not.

Subscribed and sworn to
Before me this _4_ th day of
November, 2008.

_____
Notary Public

```
OFFICIAL SEAL
KRISTY EVERS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES JUNE 2011
```

2

# EXHIBIT C

# VARGA BERGER LEDSKY HAYES & CASEY

A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

SANTA FE BUILDING
224 SOUTH MICHIGAN AVENUE
SUITE 350
CHICAGO, ILLINOIS 60604-2507

TELEPHONE: 312-341-9400
FACSIMILE: 312-341-2900

CRAIG A. VARGA
(312) 341-9820

cvarga@vblhc.com

November 5, 2008

**VIA FACSIMILE**

Mr. Alexander H. Burke
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 732
Chicago, IL 60601

Re:    <u>Jade Carpenter v. Payday Loan Stores of Illinois, Inc.</u>, Case No. 08 CV 5355

Dear Alex:

This follows up on and confirms my phone call to you on Monday at which time I indicated that our client, The Payday Loan Store of Illinois, Inc. ("PLS"), would be filing, by way of responsive pleading to Ms. Carpenter's complaint, a motion to compel arbitration.

As part of each loan transaction that is the subject of Ms. Carpenter's complaint (i.e., the January 2, 2008 loan transaction and the February 21, 2008 loan transaction), Ms. Carpenter entered into a written agreement requiring that, on the election of either party, any dispute would be subject to binding arbitration.  PLS elects to have Ms. Carpenter's dispute resolved by binding arbitration.

As you and I discussed, we will notice the motion to compel up for the week of November 17, so that you may review it and let us know whether you will be opposing it and, if so, what agreed briefing schedule we may request from Judge Gettleman.

Please let me know if you have any questions.

Very truly yours,

Craig A. Varga

CAV/mer

## <u>CERTIFICATE OF SERVICE</u>

Joshua D. Davidson, an attorney, hereby certifies that a true and correct copy of the

foregoing **Motion for Leave to File Amended Appearances and for Leave to File Instanter**

**Motion to Compel Arbitration and Stay Proceedings** was served electronically via CM/ECF e-

Filing upon:

Alexander Holmes Burke
ABurke@BurkeLawLLC.com

this 7th day of November, 2008.

s/ Joshua D. Davidson
